UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

O.F., individually and on behalf of M.F.,

    Plaintiff,

    v.

HEALTH CARE SERVICE CORPORATION,
doing business as BLUE CROSS BLUE
SHIELD OF TEXAS,

    Defendant.

No. 1:25-CV-00127

Judge Edmond E. Chang

MEMORANDUM OPINION AND ORDER

O.F.'s daughter M.F. received mental-health treatment from two facilities in Utah. R. 1, Compl. ¶¶ 1, 4.[1] After O.F.'s claims for insurance coverage were denied, he brought this suit against Health Care Service Corporation (which does business as Blue Cross Blue Shield of Texas), the entity that administered the relevant benefits plans. *Id.* ¶¶ 2, 5; R. 23, Def.'s Br. at 2. O.F. alleges violations of the Employment Retirement Income Security Act of 1974 (commonly known as ERISA), 29 U.S.C. § 1132(a), and the Mental Health Parity and Addiction Equity Act of 2008, *id.* § 1185a(a)(3).[2] Compl. ¶¶ 9, 49–94. Blue Cross now moves to dismiss the Complaint for failure to state a claim. R. 22, Def.'s Mot.; Def.'s Br. at 1. For the reasons explained

---

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

[2]This Court has subject matter jurisdiction over this case under 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.

in this Opinion, the current complaint is dismissed, though the dismissal is without prejudice for now and with leave to amend.

## I. Background

O.F. and M.F. are a father-daughter duo who live in Texas and are covered by health-insurance plans administered by Blue Cross over the course of two years. Compl. ¶¶ 1–2, 4–5. Seeking mental-health treatment, M.F. was admitted to two facilities in Utah (Aspiro Wilderness Adventure Therapy and later La Europa Academy) during various times from October 2021 to December 2022. *Id.* ¶¶ 4, 10, 26. O.F. submitted claims to Blue Cross for both periods of inpatient treatment. *Id.* ¶¶ 11, 27.

Blue Cross ultimately denied O.F.'s claims. Compl. ¶ 5. For M.F.'s treatment at Aspiro, Blue Cross denied O.F.'s claim because Aspiro provided "behavioral health outdoor/wilderness services" that were excluded under the plans from the coverage of "residential treatment center[s]" and from "behavioral health services." *Id.* ¶¶ 24–25. As for La Europa, Blue Cross explained that a facility would be considered a residential treatment center only if there was 24-hour nursing, a service that was unavailable at La Europa. *Id.* ¶¶ 32–33.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).[3] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)). At the same time, the Supreme Court instructs that "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task ...." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The Seventh Circuit has drawn a context-dependent distinction between relatively straightforward employment discrimination claims versus more complex claims. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404–05 (7th Cir. 2010).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (cleaned up). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

---

[3]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

### III. Analysis

Consistent with the treatment of factual allegations at the pleading stage, Blue Cross does not contest the alleged facts for purposes of its motion to dismiss. Def.'s Br. at 2 n.2. And the parties agree that ERISA governs the plans. *Compare* Compl. ¶ 3, *with* Def.'s Br. at 5–9. But the parties disagree on whether the wilderness program at Aspiro and the residential program at La Europa are covered, as a matter of law, by O.F.'s plans. Def.'s Br. at 5–9; R. 29, Pl.'s Resp. at 8–11. Within this claim, O.F. suggests that Blue Cross's procedurally inadequate denial furnishes an independent basis for relief. Pl.'s Resp. at 10–11. And if the programs are not covered, O.F. argues that the exclusion of either violates the Parity Act. Pl.'s Resp. at 11–16. The Court will take each argument in turn.

To do so, the Court considers O.F.'s health-insurance plans, as described in the 2021 and 2022 benefits booklets. Blue Cross attaches copies of the booklets to its motion to dismiss, R. 23-1, Exh. 1, 2021 Benefits Booklet; R. 23-1, Exh. 2, 2022 Benefits Booklet, and because the terms of the plans are central to O.F.'s claims, the Court considers them at the pleading stage, *Esco v. City of Chicago*, 107 F.4th 673, 678–79 (7th Cir. 2024). O.F. acknowledges that the relevant terms are the same in both booklets, Pl.'s Resp. at 3 n.5, so for convenience's sake, the Court will refer to just the 2021 version of the plans.

### A. ERISA

The threshold question is the proper standard of review for the ERISA claim. Typically, claimants prefer that federal courts give *de novo* review to plan

4

determinations (which are usually rejections of claims) rather than grant discretion to the plan administrator. Here, however, O.F. contends that the plans give Blue Cross discretion to interpret terms and benefits, so Blue Cross would have deference under the familiar arbitrary-and-capricious standard. Compl. ¶¶ 51–52, 58; Pl.'s Resp. at 10–11. Applying that deference here might help O.F. because he asserts that the plan made various procedural mistakes during its consideration of his claim; in contrast, *de novo* review renders the plan's past procedural steps as largely unimportant. Not surprisingly, then, Blue Cross counters that *de novo* review applies in this case because the plans, as O.F. acknowledges, are fully insured and cover Texas residents, so the plans are subject to Texas's law prohibiting the kind of discretionary clause found in the plans. Compl. ¶¶ 1, 3; R. 33, Def.'s Reply at 14–15. *See generally* 2021 Benefits Booklet (noting dispute processes with Texas Department of Insurance). Blue Cross has the better of the argument: Texas law clearly forbids conferring discretion to the plans. *See* 28 Tex. Admin. Code §§ 3.1201, 3.1203 (prohibiting discretionary clauses); *Ferrin v. Aetna Life Ins. Co.*, 336 F. Supp. 3d 910, 918–20 (N.D. Ill. 2018) (applying Texas regulation and concluding that *de novo* review applies).

Because review is *de novo*, O.F.'s procedural claim that he did not receive a full and fair review fails to adequately state a claim for relief.[4] *See* Compl. ¶¶ 51–52, 58;

---

[4]Even if Texas law did not invalidate Blue Cross's interpretive discretion, the standard-of-review dispute would be immaterial. O.F. could not state a claim for procedural relief under the more deferential arbitrary-and-capricious standard because the Court independently concludes, under the standard of review more favorable to O.F., that he is not entitled to benefits under the plans.

*Marantz v. Permanente Med. Grp., Inc. Long Term Disability Plan*, 687 F.3d 320, 328 (7th Cir. 2012). So the Court must make an "independent decision" based on the *full* record, rather than an administrative record. *Kronik v. Prudential Ins. Co. of Am.*, 570 F.3d 841, 843 (7th Cir. 2009).

Moving on to the merits of Blue Cross's benefits decision, in evaluating plans governed by ERISA, the Court applies "[o]rdinary principles of contract interpretation." *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 102 (2013). Ambiguous terms are construed against Blue Cross and in favor of O.F. *Ruttenberg v. U.S. Life Ins. Co.*, 413 F.3d 652, 665–66 (7th Cir. 2005).

O.F. asserts that he is entitled to benefits arising from M.F.'s treatment at Aspiro and La Europa. He appears to concede, however, that there is no coverage for care at Aspiro because it is a "wilderness" program, and those types of programs are explicitly excluded from the plans' coverage of "[b]ehavioral health services" and "Residential Treatment Center[s]." Pl.'s Resp. at 8–9; 2021 Benefits Booklet at 57, 74. Likewise, O.F. seems to acknowledge that the plans require residential treatment centers to provide 24-hour onsite nursing, a service that O.F. does not contend is available at La Europa. Pl.'s Resp. at 8–9; 2021 Benefits Booklet at 74.

As an alternative, O.F. argues that both facilities provided "mental health care" as either "Provider[s]," "Other Provider[s]," or "other licensed facilit[ies]." Pl.'s Resp. at 8–9. O.F. does not exactly spell out this argument, but as best as the Court can discern, O.F. contends that Aspiro and La Europa count as "Facility Other Provider[s]." 2021 Benefits Booklet at 71, 73. But this argument results in the same

problem for O.F.: the plans provide a closed, enumerated list of facilities that qualify as "Facility Other Provider[s]." *Id.* at 71. O.F. does not explain which facility on the list he believes best describes either Aspiro or La Europa, and the most applicable appears to be a "Residential Treatment Center for Children and Adolescents." *Id.* But those centers are defined alongside general "Residential Treatment Center[s]" and thus are subject to the same conditions.[5] *Id.* at 74. So the same exclusion of wilderness programs and the same requirement for 24-hour nursing apply. *Id.*

Lastly on ERISA, O.F. couches his claims as "allegations" that must be accepted as true at the pleading stage, *see, e.g.*, Pl.'s Resp. at 2, 8, but any arguments about whether he is entitled to benefits under the terms of the plans are *legal*, not factual. So although the Court accepts O.F.'s factual account as true, the Court cannot accept as true O.F.'s legally conclusory statements. *Iqbal*, 556 U.S. at 678. Based on the current pleadings, there is no coverage for the treatment programs under the plans.

### B. Parity Act

Even if benefits may not be due directly under the plans, O.F. contends that he still may recover benefits if the basis for denial violates the Parity Act. Pl.'s Resp. at 9–16. The Parity Act broadly prohibits "financial requirements" and "treatment

---

[5]In his Complaint, O.F. stated that he argued to Blue Cross that "Residential Treatment Center[s] for Children and Adolescents" were not subject to the same requirements as "Residential Treatment Center[s]." Compl. ¶ 36. As Blue Cross argues, the two terms are best understood together, particularly because the latter includes in its definition the former. Def.'s Br. at 4, 8 n.8. And in any event, O.F. does not make this argument in his response to the motion to dismiss, so it is waived. *Braun v. Village of Palatine*, 56 F.4th 542, 553 (7th Cir. 2022).

limitations" that apply to "mental health or substance use disorder benefits" and are "more restrictive than the predominant [financial requirements or] treatment limitations applied to substantially all medical and surgical benefits covered by the plan." 29 U.S.C. § 1185a(a)(3)(A). These restrictions can be "quantitative" or "nonquantitative" in nature, 29 C.F.R. § 2590.712(a), and some examples of the latter include "[r]estrictions based on geographic location, facility type, provider specialty, and other criteria that limit the scope or duration of benefits," *id.* § 2590.712(c)(4)(ii)(H). O.F.'s challenges to the plans' compliance with the Parity Act concern these kinds of nonquantitative treatment limitations.

As best as the Court can discern, O.F. advances four theories to contend that he has stated a plausible Parity Act violation: (1) the 24-hour-nursing requirement, which applies to residential treatment centers (a mental-health benefit), does not apply to all medical and surgical benefits, Compl. ¶ 37; Pl.'s Resp. at 13; (2) the plans may not incorporate state and federal law as to medical and surgical benefits if it instead writes into the plans the same requirement for mental-health benefits, Pl.'s Resp. at 14; (3) the plans' requirements for mental-health benefits are in excess of either what is required for a facility to be licensed or to meet the generally accepted standards of care, Compl. ¶¶ 38, 67–68; Pl.'s Resp. at 14 n.71; and (4) the Parity Act facially may not apply a limitation to only mental-health benefits, Pl.'s Resp. at 14.

First, on the 24-hour-nursing requirement, O.F. argues that there are two ways that the requirement might plausibly violate the Parity Act: because analogous medical and surgical benefits do not require 24-hour nursing, Pl.'s Resp. at 13, and

8

because, even if 24-hour nursing is required, only residential treatment centers require nurses to be *onsite*, *id.* at 14 n.73. To compare mental-health treatment with medical treatment in this context, the right comparison for residential treatment centers (the mental-health benefit at issue) is skilled nursing facilities (a medical and surgical benefit). Final Rules Under the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008, 78 Fed. Reg. 68240, 68247 (Nov. 13, 2013) (codified at 26 C.F.R. pt. 54, 29 C.F.R. pt. 2590, 45 C.F.R. pts. 146, 147). O.F.'s first theory thus fails because there is no disparity between the requirements: the plans require residential treatment centers to have 24-hour nursing, and the plans incorporates state and federal law to require the same of skilled nursing facilities.[6] *See* 2021 Benefits Booklet at 74–75; Utah Admin. Code R432-150-5(2) (2018); 42 U.S.C. § 1395i-3(b)(4)(C)(i).[7] Against this, O.F. highlights that federal law allows

---

[6]The Court recognizes that different states may have more relaxed requirements for skilled nursing facilities such that the 24-hour-nursing requirement is more restrictive in its effect on mental-health benefits. But O.F. does not argue that this possibility is true or that it would invalidate the plans' requirement, nor is it immediately apparent to the Court that O.F. could make this kind of "facial" challenge to the plans' text when it may have no effect on *O.F.*'s own claim. *See United States v. Stevens*, 559 U.S. 460, 472–73 (2010) (noting that facial challenges in constitutional contexts generally require "that no set of circumstances exists under which [the statute] would be valid" or "if a substantial number of its applications are" unlawful (cleaned up)); *Six Star Holdings, LLC v. City of Milwaukee*, 821 F.3d 795, 803 (7th Cir. 2016) (highlighting that facial challenges are associated with prospective relief).

[7]O.F. also suggests that residential treatment centers should be compared to hospice and rehabilitation facilities. Compl. ¶¶ 20, 66; Pl.'s Resp. at 13 & n.70. But O.F. neither explains why an analogy to hospice care is more appropriate in light of the federal regulations nor responds to Blue Cross's argument in its principal brief that hospice facilities are also required by state and federal law to have 24-hour nursing. Def.'s Br. at 13 n.11; 42 C.F.R. § 418.100(c)(2); Utah Admin. Code R432-750-25(1) (2017). And O.F. does not develop an argument about the requirements for rehabilitative services at all, so the Court rejects O.F.'s legally conclusory analogy.

9

exceptions to the 24-hour requirement in rural areas, and he believes this evinces a disparity. Pl.'s Resp. at 14 n.73. But the law envisions an exception to the requirement that a "registered professional nurse" work more than 40 hours a week; the requirement for a "24-hour licensed nursing service" is separate and not excepted by the statute cited by the parties. 42 U.S.C. § 1395i-3(b)(4)(C).

O.F.'s alternative argument also fails. It is true that the plans require residential treatment centers to provide "24 hour *onsite* nursing," 2021 Benefits Booklet at 74 (emphasis added), but O.F.'s argument says little more. He does not, for example, develop any argument why the word "onsite" shows an actual disparity, and he does not explain why, under Utah and federal law, the 24-hour-nursing requirement for skilled nursing facilities can be fulfilled with "offsite" nurses (or how). And in reality, the Utah law in effect at the time required the "24-hour licensed nursing services" to "ensure that nursing staff are present *on the premises at all times*." Utah Admin. Code R432-150-5(2)(a) (2018) (emphasis added). Likewise, federal regulations require skilled nursing facilities "to provide nursing care to all *residents*" "on a 24-hour basis," 42 C.F.R. § 483.35(a)(1) (2016) (emphasis added); *see also* 42 U.S.C. § 1395i-3(b)(4)(C)(i), so the Court cannot conceive of how the requirement would plausibly permit offsite nursing, particularly when O.F. does not fully develop the argument, *United Cent. Bank v. Davenport Est. LLC*, 815 F.3d 315, 318 (7th Cir. 2016) (undeveloped arguments deemed waived).[8]

---

[8]The Court underscores that this confusion begins with the pleadings. For example, in the complaint, O.F. alleges that Blue Cross denied his claim for M.F.'s treatment at La

Second, O.F. contends that, even if the requirements ultimately may be the same, they are derived from different sources and thus are disparate. Pl.'s Resp. at 14. The Court recognizes that other decisions in this district have agreed with O.F. and concluded that plaintiffs plead a plausible Parity Act violation because the 24-hour-nursing requirement applies to skilled nursing facilities by operation of state and federal law yet applies to residential treatment centers directly via the plans' plain text. *See, e.g.*, *Brian W. v. Health Care Serv. Corp.*, 2025 WL 306365, at *6 (N.D. Ill. Jan. 27, 2025); *Brady K. v. Health Care Serv. Corp.*, 2025 WL 2734542, at *4 (N.D. Ill. Sep. 25, 2025). The Court respectfully disagrees. Although the requirements' *origins* differ, the Parity Act is concerned with whether the "treatment limitations" are "more *restrictive*," 29 U.S.C. § 1185a(a)(3)(A)(ii) (emphasis added), that is, whether the limitations are *actually* more restrictive for mental-health treatment. *See Midthun-Hensen ex rel. K.H. v. Grp. Health Coop. of S. Cent. Wis., Inc.*, 110 F.4th 984, 986 (7th Cir. 2024) (noting that Parity Act requires "equal footing" and prohibits the application of "more stringent[]" requirements on mental-health benefits). Whether the limitations are "as written" or "in operation," 29 C.F.R. § 2590.712(c)(4)(i), the

---

Europa because the site lacked "twenty-four-hour nursing" without reference to if "onsite" has additional meaning. Compl. ¶ 33. And as Blue Cross notes in its reply brief, O.F. alleged that a uniform requirement of 24-hour nursing applies to "all intermediate inpatient treatment," which encompasses residential treatment centers and skilled nursing facilities. *See* Def.'s Reply at 9; Compl. ¶ 84.

upshot is that equal limitations arising from different *sources* do not create a disparity in the limitations.[9]

O.F.'s third argument is that both categories of benefits (that is, mental-health benefits and surgical and medical benefits) ultimately should be defined according to licensure requirements and the generally accepted standards of care. Compl. ¶¶ 38, 67–68; Pl.'s Resp. at 14 n.71. To begin, the Court highlights that the regulations governing the Parity Act have been amended recently. *Compare* 29 C.F.R. § 2590.712 (2014), *with* 29 C.F.R. § 2590.712 (2024).[10] And although the amended regulations took effect on November 22, 2024, Requirements Related to the Mental Health Parity and Addiction Equity Act, 89 Fed. Reg. 77586, 77586 (Sep. 23, 2024) (codified at 26 C.F.R. pt. 54, 29 C.F.R. pt. 2590, 45 C.F.R. pts. 146, 147), the provisions apply only to plans that began on or after January 1, 2025 (or in other cases, later). 29 C.F.R. § 2590.712(i)(1)(i) (2024).

The different regulations shed significant light on the plausibility of O.F.'s arguments. The regulations in effect at the time permitted a plan to apply "a *general standard* that any provider must meet the highest licensing requirement … to participate in the plan's provider network." 29 C.F.R. § 2590.712(c)(4)(iii) (Example 7)

---

[9]It is worth noting that the converse is also true: if treatment limitations for medical and mental-health treatment are *written* the same in the plans but in actual *operation* end up favoring medical treatment over mental-health treatment, then there might be a Parity Act violation notwithstanding that the plan's text purports to treat the conditions the same. That principle again demonstrates that the *source* of the limitations matters not.

[10]Where the Court has cited to § 2590.712 without specifying which version, the citation has been to the one in effect from 2014 to 2024 and that governed O.F.'s plans.

(emphasis added). And even if that requirement affected mental-health benefits but did not affect medical or surgical benefits (because the latter already were required by state law to meet the general standard), there was no Parity Act violation. *Id.* No matter, too, that there may be a "disparate impact on certain mental health providers." *Id.* Contrast Example 7 from the prior governing regulations with Example 5 from the present-day regulations: the latter provides that a Parity Act violation occurs where a uniform standard deviates from one category's generally accepted standards of care but not the other. 29 C.F.R. § 2590.712(c)(4)(vi)(E) (2024); *see generally id.* § 2590.712 (2024) (emphasizing "greater burden[s] on access" and "outcomes" in assessing disparities). Under the then-effective regulations, an evenly applied requirement did not violate the Parity Act, even if the requirement created a disparate impact. So O.F. has not stated a plausible Parity Act violation on the basis that the 24-hour-nursing requirement for residential treatment centers might exceed licensure or care standards.

Finally, O.F. argues that a wilderness-treatment exception is inherently a Parity Act violation because there is no medical or surgical analogue. Pl.'s Resp. at 15. For three reasons, this argument fails. First, although the plans exclude wilderness programs from coverage as residential treatment centers on the basis that the programs "provide primarily a supportive environment," 2021 Benefits Booklet at 74; *see also Alice F. v. Health Care Serv. Corp.*, 367 F. Supp. 3d 817, 826 (N.D. Ill. 2019), the plans also exclude "Custodial Care," which is "any service primarily for personal comfort for convenience," 2021 Benefits Booklet at 55, 62. So non-therapeutic care is

excluded from both mental-health benefits and medical and surgical benefits.[11] Second, O.F. suggests that not all wilderness programs are primarily supportive, so the restriction burdens residential treatment centers more than the custodial-care limitation does for skilled nursing facilities. *See* Pl.'s Resp. at 15. But O.F. does not allege any facts in his complaint that any wilderness programs are in fact primarily therapeutic, and he does not allege any facts that M.F.'s treatment at Aspiro specifically was primarily therapeutic. Without those factual allegations, O.F. fails to state a plausible Parity Act violation. Third and more generally, O.F.'s argument may be too granular because the proper comparison appears to be whether a certain category of treatment limitations (geography or facility type, as examples) is applied more restrictively as a general matter on mental-health benefits than their medical and surgical analogues. *Cf. Midthun-Hensen*, 110 F.4th at 988.

---

[11]O.F. relatedly asserts that wilderness programs are excluded on the basis that they occur outdoors, so he argues that the plans impose an impermissible restriction based on geography. Pl.'s Resp. at 15–16. This argument, however, is unpersuasive: the plans exclude supportive services, not services that take place outdoors. *Alice F.*, 367 F. Supp. 3d at 828. And in any event, O.F. merely states that Blue Cross fails to identify an analogous exclusion of outdoor services in the medical and surgical context, Pl.'s Resp. at 16, but this inverts the burden for pleading. O.F. must "plausibly allege that [his] health insurance plan[s] appl[y] a *separate or more restrictive* treatment limitation." *C.W. v. United Healthcare Servs., Inc.*, 2024 WL 3718203, at *2–3 (N.D. Ill. Aug 8, 2024) (emphasis added). Without factual allegations that Blue Cross's processes are not evenly applied or legal arguments that the plans do in fact have a coverage disparity, O.F. presently has not stated a plausible claim.

## IV. Conclusion

Blue Cross's motion to dismiss, R. 22, is granted, but without prejudice and with leave to amend. If O.F. genuinely believes that he can fix the deficiencies identified in this Opinion, then his amended complaint is due on or before April 17, 2026.

ENTERED:

s/Edmond E. Chang

Honorable Edmond E. Chang
United States District Judge

DATE: March 31, 2026